# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

DETRICK DESHAWN CROSTON,
ADC # 131172                                                                                        PLAINTIFF

v.                                            5:09-cv-00373-BSM-JJV

LARRY NORRIS, Director, Arkansas
Department of Correction; *et al.*                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

Plaintiff, Detrick Coleman, is an inmate in the Arkansas Department of Correction East Arkansas Regional Unit. He filed a *pro se* Complaint (Doc. No. 2) pursuant to 42 U.S.C. § 1983, alleging the Defendants violated his constitutional rights. Defendants Larry Norris, Ray Hobbs, James Gibson, Minnie Drayer, Gaylon Lay, Donald Tate, Michael White, Christy Whitaker, Rose Jackson, Jimmy Coleman, J.D. Ranna, Michael Richardson, and Jimmy Mizell all work for the ADC [hereafter collectively referred to as the ADC Defendants[1]]. The ADC Defendants filed a Motion For Summary Judgment (Doc. No. 52) asserting that they are entitled to summary judgment as a matter of law. Plaintiff filed a

---

[1]On February 18, 2010, the summons for Separate Defendant Marilyn Donigan was returned unexecuted. (*See* Doc. No. 7). Plaintiff has not filed a Motion to Correct her service address.

Response (Doc. No. 57) and his own Motion for Summary Judgment (Doc. No. 59), to which the ADC Defendants responded (Doc. No. 64).

## I.     SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986); *Janis v. Bresheuvel*, 428 F.3d 795, 798-99 (8th Cir. 2005). Although the evidence is viewed in a light most favorable to the nonmoving party, *Nooner v. Norris*, 594 F.3d 592, 600 (8th Cir. 2010), the non-moving party has the burden of going beyond the pleadings and, by affidavit or otherwise, producing specific facts that show that there is a genuine issue for trial. *Janis*, 428 F.3d at 799. A genuine issue of fact exists if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material when it might affect the outcome of the case. *Rakes v. Life Investors Ins. Co. of Am.*, 582 F.3d 886, 894 (8th Cir. 2009).

When confronted with cross-motions for summary judgment, the Court evaluates each motion independently to determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *See Husinga v. Federal-Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "The filing of cross-motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the case to plenary determination on the

merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). In such instances, the Court is bound to deny both motions if it finds that there is actually a genuine issue of material fact. *Jacobson v. Maryland Cas. Co.*, 336 F.2d 72, 75 (8th Cir. 1964).

## II. UNDISPUTED FACTS

On June 22, 2009, while escorting Nurse Donigan during the evening pill pass, Officer Redmond observed Plaintiff and his cellmate masturbating in their cell. (Doc. No. 53 at ¶ 6; Doc. No. 53-4 at 1). Because ADC rules prohibit inmates from masturbating in the presence of others, Officer Redmond wrote Plaintiff a disciplinary. (Doc. No. 53-6 at 2, ¶ 6). Nurse Donigan wrote a "005 incident report" (witness statement) stating she also had observed Plaintiff masturbating in his cell. (Doc. No. 53 at ¶ 7).

On the following day, Sgt. Whitaker served Plaintiff with the disciplinary. (*Id.* at ¶ 8). When she asked Plaintiff if he wanted to call any witnesses at his hearing, he replied that he wanted to call Sgt. Coleman and Nurse Donigan (*Id.*; Doc. No. 67 at ¶ 6), and he also wanted a positive identification from Nurse Donigan. (Doc. No. 53 at ¶ 9). When he realized Nurse Donigan was not listed as a witness on the disciplinary, Plaintiff filed grievance number CU-09-670, to request that Nurse Donigan prepare a witness statement for his hearing. (*Id.* at ¶¶ 10-11).

Plaintiff's disciplinary hearing was held on June 26, 2009 (*Id.* at ¶ 12; Doc. No. 58 at 25) with Minnie Drayer presiding as the hearing officer. (Doc. No. 53 at ¶ 12). During the hearing, Plaintiff showed Ms. Drayer the "informal" pertaining to his witness request. (*Id.*) Ms. Drayer also considered Nurse Donigan and Sgt. Coleman's witness statements.

4

(*Id.*)  At the conclusion of the hearing, Plaintiff was found guilty of failing to obey an order from staff, indecent exposure, and masturbation in the presence of an inmate.  (*Id.* at ¶ 13).  He was sentenced to thirty days punitive isolation.  (*Id.*)

Following this conviction, Plaintiff filed an appeal (Doc. No. 58 at 25) and argued that he was denied due process when Ms. Drayer denied his request to call Nurse Donigan as a witness.  (*Id.*)  Upon the denial of this appeal, Plaintiff filed a subsequent appeal with James Gibson, Disciplinary Hearing Administrator.  (*Id.* at 27).  Mr. Gibson found that Plaintiff had failed to present any evidence warranting the reversal or modification of Ms. Drayer's decision and affirmed her decision.  Thereafter, Plaintiff filed a final appeal with Larry Norris, Director of ADC, who also affirmed Ms. Drayer's decision.  (*Id.* at 28).  He specifically found there was "no due process violations that would warrant modification or reversal of the disciplinary hearing officer's decision."  (*Id.*)

Plaintiff also filed Grievance number CU-09-750[2] after his major disciplinary conviction.  (Doc. No. 53 at ¶ 14).  He alleged that he had been misidentified by Nurse Donigan and that she had attempted to retract her earlier identification.  (*Id.*)

On December 2, 2009, Plaintiff filed the instant Complaint.  (Doc. No. 2).  However, on August 11, 2010, Plaintiff filed a Motion to Voluntarily Dismiss Defendants Ray Hobbs, Donald Tate, Michael White, Rose Jackson, Jimmy Coleman, J. D. Rana, Michael Richardson, and Jimmy Mizell.  (Doc. No. 49; Doc. No. 53 at ¶ 1).  He admitted that he

---

[2]Plaintiff filed Grievance number CU-09-750 on June 28, 2009.  (Doc. No. 53-8, p. 1).  He fully exhausted his administrative remedies, as to that particular grievance, on January 19, 2010.  (*Id.* at p. 4; Doc. No. 53, ADC Defts.' Statement of Facts, at ¶ 14).

never filed a grievance against the Defendants listed in his motion and he had failed to exhaust his administrative remedies. (Doc. No. 53 at ¶ 3). Plaintiff also admitted he had failed to file grievances against Larry Norris and James Gibson. (*Id.* at ¶ 4). Eight days after filing the Motion to Dismiss, he filed a Motion to Withdraw the Motion to Dismiss. (Doc. No. 51).

### III. ANALYSIS

#### A. ADC Defendants' Motion For Summary Judgment

The ADC Defendants make numerous arguments in support of their Motion for Summary Judgment. The Court will, however, limit its view to what it deems the ADC Defendants' more compelling arguments for granting summary judgment in their favor.

##### 1. Exhaustion

The failure to exhaust administrative remedies is an affirmative defense that the defendant has the burden of pleading and proving. *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005). The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002). The PLRA's exhaustion provision specifically provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Johnson v. Jones*,

340 F.3d 624, 627 (8th Cir. 2003). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"To properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules.'" *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). The applicable procedural rules are defined not by the PLRA but by the prison grievance process itself. *Jones*, 549 U.S. at 218.

The ADC Defendants have submitted a copy of Administrative Directive 09-01, ADC's inmate grievance procedure (Doc. No. 53-2), which provides that inmates "must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit . . . . If this is not done, their lawsuit . . . may be dismissed immediately." (Doc. No. 53-2 at 17). The ADC Defendants also point to Plaintiff's Motion to Dismiss wherein he admitted that he failed to file grievances against Ray Hobbs, Donald Tate, Michael White, Rose Jackson, Jimmy Coleman, J. D. Rana, Michael Richardson, Jimmy Mizell, Larry Norris, James Gibson and Minnie Drayer.

Plaintiff counters the ADC Defendants' argument by pointing out that the ADC's grievance policy considers disciplinary matters to be non-grievable issues. (Doc. No. 53-2 at 2-3; Doc. No. 59 at 18-19). Further, Plaintiff submits documentation showing that following his disciplinary he filed two grievances, CU-09-00694 and CU-09-00750, in which he complained he was denied due process. (Doc. No. 64 at 11-12). In the Assistant

Warden's response to each grievance, Plaintiff was informed that the grievance process was not the proper channel for disciplinary matters. (*Id.*) Thus, any attempt by Plaintiff to comply with ADC's grievance procedures was prevented by the Assistant Warden's response.

Plaintiff also submits documentation showing that after receiving the disciplinary, he filed an initial appeal with Warden Lay (Doc. No. 59 at 21-22), and subsequent appeals with Mr. Gibson, Disciplinary Hearing Administrator; and Mr. Norris, ADC Director. (Doc. No. 59 at 23-24).

The ADC Defendants have failed to provide the Court with the applicable procedural rules for exhaustion of administrative remedies regarding disciplinary matters.[3] In light of this omission and upon viewing the evidence in a light most favorable to the Plaintiff, the Court finds that Plaintiff exhausted his administrative remedies against Defendants Hobbs, Tate, White, Jackson, Coleman, Rana, Richardson, Mizell, Norris, Gibson, and Drayer.

2. *Heck v. Humphrey*

The ADC Defendants also assert they are entitled to summary judgment as a matter of law because Plaintiff seeks to overturn a major disciplinary conviction and he has not yet pursued an action for state or federal habeas relief. In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that:

---

[3] This Court has previously stated that ADC's disciplinary appeals process involves the following: (1) an initial appeal to the unit warden; (2) a subsequent appeal to the disciplinary hearing officer; and (3) a final appeal to the Director of the ADC. *See Smith v. Deloney*, No. 5:85cv00080 JMM, 2008 WL 4493038, at *5 (E.D. Ark. Oct. 3, 2008).

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486-87; *see Edwards v. Balisok*, 520 U.S. 641, 643 (1997). The Court's holding in *Heck* has been applied to prison administrative rulings, including rulings in disciplinary proceedings that affect the length of a prisoner's sentence. *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996). Conversely, *Heck* does not apply when a prisoner challenges a disciplinary ruling that has no affect on the length of the prisoner's sentence. *See Portley-El v. Brill*, 288 F.3d 1063, 1066-67 (8th Cir. 2002); *Sheldon*, 83 F.3d at 234.

Under *Heck*, if an inmate's success on a § 1983 claim will imply that the results of the disciplinary proceeding lengthening the inmate's sentence are invalid, the inmate's § 1983 claim will arise only after a state or federal habeas court finds the disciplinary invalid. *Sheldon*, 83 F. 3d at 234. When confronted with the question of whether success on the merits will render a disciplinary invalid, the Court disregards the form of relief sought and instead looks to the essence of the plaintiff's claims. *Id.* If success on the merits of a particular § 1983 claim will imply the invalidity of a disciplinary, then *Heck* requires a favorable termination of the action in an authorized state tribunal or a federal habeas court. *Id.*

Thus, the Court must first determine what affect, if any, the disciplinary had on Plaintiff's sentence. The ADC Defendants state that Plaintiff's disciplinary conviction also

9

involved a demotion in class status, which determines the rate in which an inmate accumulates good time credits; they, therefore, believe that Plaintiff is challenging a disciplinary proceeding that affected the length of his sentence. (Doc. No. 54 at 7). Good time credits affect the length of an inmate's sentence. *See Portley-El*, 288 F.3d at 1066. When a prisoner's claim relates to the loss of good time credits, the prisoner's claim for damages under § 1983 will arise only after the prisoner has succeeded on a petition for habeas relief. *Id.*; *see Preiser v. Rodriguez*, 411 U.S. 475, 510 (1973).

Plaintiff's disciplinary violation indicates he did not lose any good credits. (Doc. No. 53-4 at 2). Moreover, the ADC Defendants fail to provide any authority for their supposition that a reduction in class status will ultimately affect the length of an inmate's sentence. Therefore, the Court finds that Plaintiff's disciplinary had no affect on the length of his sentence and his claims are not barred by *Heck*.

        3.      Due Process Claim

Plaintiff alleges he was denied procedural due process when he was not allowed to call witnesses during his disciplinary hearing. The Due Process Clause protects an individual's life, liberty, and property interests. *See McIntyre Mach., Ltd. v. Nicastro*, __ U.S. __, 131 S.Ct. 2780, 2786 (2011); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). While incarcerated, prisoners retain their right to the protections afforded by the Due Process Clause. *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974); *Goff v. Dailey*, 991 F.2d 1437, 1440 (8th Cir. 1993). The touchstone of due process is protection of the individual against arbitrary action by the government. *Wolff*, 418 U.S. at 559; *Ponte v. Real*, 471 U.S. 491, 495

(1985). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff*, 418 U.S. at 556; *Garland v. Polley*, 594 F.2d 1220, 1221 (8th Cir. 1979).

Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in a criminal proceeding do not apply in disciplinary proceedings. *Wolff*, 418 U.S. at 556; *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (8th Cir. 1994). Due process does not entitle prison inmates to a hearing to which they are on equal footing with prison officials. *Goff*, 991 F.2d at 1441. However, "[t]he disciplinary hearing must offer the inmate an opportunity to explain his actions or otherwise defend himself before the disciplinary authority[.]" *Id.* at 1442. In *Wolff v. McDonnell*, 418 U.S. 539, the Supreme Court set forth the following procedural protections that are to be afforded inmates during disciplinary proceedings: (1) at least twenty-four hours advanced written notice of the claimed violation; (2) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the right to call witnesses and present documentary evidence in defense when to do so would not be unduly hazardous to institutional safety or correctional goals. *Id.* at 558-572; *Espinoza v. Peterson*, 283 F.3d 949, 952 (8th Cir. 2002); *Jensen v. Satran*, 651 F.2d 605, 607 (8th Cir. 1981). The protections afforded by *Wolff* will come into play when a protected liberty interest is implicated. *Sandin v. Conner*, 515 U.S. 472, 477-88 (1995); *Espinoza*, 283 F.3d at 951.

Thus, before addressing whether Plaintiff was afforded the protections set forth in

*Wolff*, the Court must first address whether Plaintiff was deprived of a protected liberty interest. *See Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011); *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). A protected liberty interest may arise from two sources – the Due Process Clause itself and the laws of the State. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Senty-Haugen*, 462 F.3d at 886.

As a result of his disciplinary conviction, Plaintiff served thirty days in punitive isolation. The ADC Defendants assert that Plaintiff's disciplinary did not deprive him of a protected liberty interest that would invoke the protections of the Due Process Clause. Whether a prisoner has a protected liberty interest in remaining out of punitive isolation will depend on whether the prisoner has suffered an atypical, significant deprivation in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484-486; *Portley-El*, 288 F.3d at 1065. It is well settled that an inmate's placement in thirty-days punitive isolation is not an atypical and significant hardship. *See e.g. Sandin*, 515 U.S. at 486 (thirty days in disciplinary segregation not atypical hardship); *Portley-El*, 288 F.3d at 1065-66 (thirty days in punitive segregation not an atypical and significant hardship); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (demotion from administrative segregation to thirty days punitive isolation was not an atypical and significant hardship). Accordingly, the Court finds that Plaintiff's disciplinary conviction did not deprive him of a protected liberty interest.

Plaintiff, however, argues that the ADC's disciplinary rules created a liberty interest. Plaintiff is mistaken. The ADC's disciplinary rules do not confer onto him a protected liberty interest. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Kennedy*, 100 F.3d

at 643; *Munson v. Ark. Dep't of Corr.*, 375 Ark. 549, 551, 294 S.W.3d 409, 411 (Ark. 2009).

The Court finds that Plaintiff does not have a protected liberty interest that would entitle him to the protections of the Due Process Clause. The ADC Defendants are, therefore, entitled to summary judgment as a matter of law on Plaintiff's due process claim and Plaintiff's claims against Defendants Norris, Gibson, Drayer, Lay, Tate, White, Whitaker, Jackson, Coleman, Rana, Richardson, and Mizzell should be DISMISSED with prejudice.

4. Retaliation Claim

Plaintiff also asserts a retaliation claim against Sgt. Whitaker. On December 20, 2008, Plaintiff informed certain ADC officials that his brother had been charged with murdering Sgt. Whitaker's niece and he was concerned that Sgt. Whitaker would take some sort of retaliatory action against him. (Doc. No. 2 at 15, Doc. No. 59 at 14, Doc. No. 67 at ¶ 5). When Sgt. Whitaker served Plaintiff with the disciplinary on June 23, 2009, he requested that Nurse Donigan be listed as a witness at his disciplinary hearing. (*Id.* at ¶ 6). Sgt. Whitaker replied that he could not call Nurse Donigan as a witness because she had written an "005" on him. (Doc. No. 53-3 at 7). Plaintiff now believes that Sgt. Whitaker retaliated against him when she refused to obtain the witness statement from Nurse Donigan.

In order to prevail on his § 1983 retaliation claim, Plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) he suffered an adverse action, and (3) the adverse action was causally related to the protected expression. *Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010); *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007); *Burch*

13

*v. Naron*, 333 F. Supp. 2d 816, 826 (W.D. Ark. 2004). The evidence before the Court reveals that during Plaintiff's disciplinary hearing, the hearing officer had a witness statement from Nurse Donigan and considered it in rendering her decision. (Doc. No. 53-5). The Court thus finds that Plaintiff did not suffer any adverse action and Plaintiff fails to state a cognizable § 1983 retaliation claim against Sgt. Whitaker.

    **B.**    **Plaintiff's Motion For Summary Judgment**

Plaintiff argues that he is entitled to summary judgment as a matter of law because the ADC Defendants failed to follow ADC policy, procedures and regulations and therefore violated his due process rights. (Doc. 66 at 2-5). A prison official's failure to follow prison regulations or procedures does not violate a prisoner's rights under the Due Process Clause. *See Phillips*, 320 F.3d at 847; *Kennedy*, 100 F.3d at 643; *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Hence, the Court finds that Plaintiff fails to establish that he is entitled to summary judgment as a matter of law and his Motion for Summary Judgment (Doc. No. 59) should be DENIED.

**IV.**    **CONCLUSION**

After careful review of the parties' competing Motions for Summary Judgment, the Court finds there are no genuine issues of material fact to be tried and the ADC Defendants are entitled to summary judgment as a matter of law.

IT IS, THEREFORE, RECOMMENDED that:

1.    The ADC Defendants' Motion for Summary Judgment (Doc. No. 52) should be GRANTED.

  2.  Plaintiff's Motion for Summary Judgment (Doc. No. 59) should be DENIED.

  3.  Plaintiff's Complaint (Doc. No. 2) should be DISMISSED with prejudice.

  4.  The Court should certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an order adopting these recommendations, and the accompanying judgment, would not be taken in good faith.

  DATED this 5th day of August, 2011.

                  _____
                  JOE J. VOLPE
                  UNITED STATES MAGISTRATE JUDGE